IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BARBARA JOHNSON,                           No   C 08-02272 VRW

      Plaintiff,                        ORDER

      v

NORTHWEST AIRLINES, INC, et al,

      Defendant.
_____/

      Barbara Johnson brought this action in state court against Northwest Airlines, Inc, alleging that she was injured because Northwest failed to provide her with a wheelchair while changing planes at the Minneapolis-St Paul Airport on July 9, 2005. Doc #14, Exh A. Northwest removed the case to federal court on May 1, 2008. Doc #1.

      The parties dispute the adequacy of plaintiff's response to discovery requests related to plaintiff's medical records. Doc ##33, 34. Northwest seeks to discover plaintiff's complete

subpoenaed medical records from San Francisco General Hospital (SFGH) and San Francisco Community Health Network (SFCHN). Doc #34. Plaintiff has produced redacted copies of some of these medical records (Doc #33 at 8-13) and urges the court to recognize her privacy right to withhold the rest of them. Doc #33.

The court has considered submissions from both parties (Doc ##33, 34) and reviewed in camera and ex parte complete copies of the medical records in dispute. During the court's in camera, ex parte review of the medical records, the court found multiple examples of documents that were inappropriately redacted either because they related to injuries or conditions that the plaintiff had put at issue in filing this suit or because they were no longer privileged due to waiver. Accordingly, the court finds that the plaintiff should produce to Northwest unredacted copies of the disputed medical records with certain limitations and privacy restrictions as outlined below.

I

Plaintiff alleges injuries in this action related to several parts of her body. Doc #14, Exh A at 6. Plaintiff claims that she injured her right hip, wrist, back and knee. Doc #14, Exh B at 13. Plaintiff alleges that these injuries cause her constant and worsening pain in her "back and right hip (radiating down to foot), and wrist." Id. In addition to the pain, plaintiff claims that some of her injuries affect her ability to ambulate. Id at 18.

Besides plaintiff's injuries, there are other issues in this suit that implicate plaintiff's medical records. In response

to an interrogatory plaintiff stated that, unrelated to her fall, she has Lupus and arthritis, which affect her ability to ambulate. Id at 18. Additionally, other injuries or conditions that affected plaintiff's ability to ambulate at the time she attempted to switch planes are relevant to causation and may be relevant to Northwest's duty to provide a wheelchair or plaintiff's contributory negligence.

After sustaining these injuries, plaintiff visited a number of healthcare providers, including SFGH and SFCHN. Doc #14, Exh B at 14. These providers treated plaintiff for her injuries related to this action and for a variety of other medical issues. Doc #33 at 8-13.

In the course of discovery, Northwest issued subpoenas duces tecum to multiple healthcare institutions, including SFGH and SFCHN, seeking plaintiff's medical records. Doc #8-2, Exh A. While Northwest argues that the records from SFGH and SFCHN "do not date back any further than a year or so before the July 9, 2005 accident," the subpoenas did not limit their subject by date and there are a few records from SFCHN that date back to 2000. Doc #33, Exh A at 12. According to plaintiff's documentation, the subpoenaed medical records include treatment for the injuries plaintiff sustained related to this lawsuit as well as unrelated medical issues pertaining to, for example, "internal medicine." Doc #33, Exh A at 8-13.

The subpoenaed medical records have been at the center of considerable dispute. Plaintiff moved on June 13, 2008 to narrow the scope of Northwest's medical record subpoenas. Doc #7. At the hearing on plaintiff's motion, the court ordered that the medical

3

records be produced to plaintiff's counsel and for plaintiff's counsel to produce to Northwest all medical records to which plaintiff's counsel did not object. Doc #19. On October 2, 2008, plaintiff submitted to Northwest a list of documents from the subpoenaed medical records that had "no conceivable relevance to the matters" plaintiff tendered in this lawsuit. Doc #27-2, Exh 1. At a case management conference held on October 9, the court directed plaintiff's counsel to "amplify" his objections to Northwest's document requests. Doc #24. Northwest submitted a letter contesting the adequacy of plaintiff's amplified privilege log on November 7, 2008. Doc #27. After reviewing plaintiff's privilege log, the court found that plaintiff had made an inadequate showing that the medical records were privileged and ordered plaintiff to show good cause for withholding production or objecting to production of the medical records in dispute. Doc #29. Plaintiff responded to the court's order on December 3, 2008. Doc #31. At the court's request, plaintiff submitted the disputed medical records for ex parte, in camera review and both parties submitted memoranda on how the court should proceed. Doc ## 33, 34.

## II

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense * * * ." FRCP 26(b)(1). The United States Supreme Court has defined relevance broadly within the context of discovery to include "any matter that bears on, or that reasonably could lead to other matter that could bear

**4**

1   on, any issue that is or may be in the case." <u>Oppenheimer Fund,
2   Inc v Sanders</u>, 437 US 340, 351 (1978).  Although the burden on
3   parties requesting discovery is low, they must meet a threshold of
4   relevance that is beyond speculation; "litigants seeking to compel
5   discovery must describe with a reasonable degree of specificity the
6   information they hope to obtain and its importance to their case."
7   <u>Aumann Auctions, Inc v Phillips</u>, 2008 US Dist LEXIS 66540 (D Neb
8   Aug 21, 2008), citing <u>Cervantes v Time, Inc</u>, 464 F2d 986, 994 (8th
9   Cir 1972).

10          Under the Federal Rules of Evidence, when federal courts
11  preside over civil claims based on state law, state law provides
12  the rule of decision for issues of privilege.  FRE 501.  Rule 501
13  is a rule of evidence, but applies to all stages of proceedings,
14  including discovery proceedings.  FRE 1101(c).

15          Because plaintiff filed this action in California, but
16  the incident that gave rise to the suit occurred in Minnesota,
17  there is a potential dispute about the state that supplies the law
18  with respect to privilege.  Federal courts sitting in diversity
19  look to the law of the forum state, here California, in making a
20  choice of law determination.  <u>Klaxon Co v Stentor Electric
21  Manufacturing Co</u>, 313 US 487, 496 (1941); <u>Sparling v Hoffman
22  Construction Co</u>, 864 F2d 635, 641 (9th Cir 1988).

23          Under California's choice of law rules, California will
24  apply its own rule of decision unless a party invokes the law of a
25  foreign state that "will further the interest of the foreign state
26  and therefore that it is an appropriate one for the forum to apply
27  to the case before it."  <u>Hurtado v Superior Court</u>, 11 Cal 3d 574,
28  581 (1974).  See also <u>Paulsen v CNF Inc</u>, 2009 United States App

LEXIS 5852 at *46-47 (9th Cir 2009).  Neither party has invoked a foreign law such as Minnesota law in the present case, so the court applies California law.  The court notes, however, that California and Minnesota courts have similar rules with respect to the medical records privilege.  See Minn Stat § 595.02, subd 1(d); Cal Evid Code §§ 990-994; <u>Muller v Rogers</u>, 534 N W 2d 724, 726 (Minn Ct App 1995)("[In Minnesota a] party who voluntarily places his or her own medical condition in controversy is deemed to have waived medical privilege."); <u>Palay v Superior Court</u>, 18 Cal App 4th 919, 928 (1993)("[The California patient litigant exception] precludes one who has placed in issue his physical condition from invoking the privilege.").

     California law recognizes a medical records privilege that allows a patient to refuse to disclose, or prevent another from disclosing, confidential communications with a physician in the course of the patient-physician relationship.  Cal Evid Code §§ 990-994.

     There are two exceptions to the medical records privilege at issue here.  First, the patient-litigant exception "precludes one who has placed in issue his physical condition from invoking the privilege."  <u>Palay v Superior Court</u>, 18 Cal App 4th 919, 928 (1993); see Cal Evid Code § 996 ("[t]here is no privilege * * * as to communication relevant to an issue concerning the condition of the patient if such issue has been tendered by * * * [t]he patient").  The California Supreme Court has made clear that the patient litigant in a personal injury case does not waive her privilege with regard to her entire medical history; she only waives her privilege to "<u>those medical conditions</u> the patient-

6

1 litigant has disclose[d] * * * by bringing an action in which <u>they</u>
2 are in issue." <u>Britt v Superior Court of San Diego</u>, 20 Cal 3d 844,
3 863-64 (1978) (alterations and emphasis in original).

4 The second relevant exception to the medical records
5 privilege is waiver. If the holder of the medical records
6 privilege, the plaintiff in this case, discloses or consents to the
7 disclosure of "a significant part of the communication," the
8 privilege with respect to that communication is waived. Cal Evid
9 Code § 912.

10 While the scope of the patient-litigant exception and the
11 waiver of a privileged communication are governed by California
12 law, federal law sets the procedural requirements of asserting
13 privilege as a bar to discovery. See <u>DeNeui v Wellman</u>, 2008 US
14 Dist LEXIS 57340 (D SD July 16, 2008) (FRCP 26(b)(5)(A) outlines
15 the procedural requirements placed on the parties asserting a
16 privilege). A party asserting a privilege must "(i) expressly make
17 the claim; and (ii) describe the nature of the documents,
18 communications, or tangible things not produced or disclosed —— and
19 do so in a manner that, without revealing information itself
20 privileged or protected, will enable other parties to assess the
21 claim." FRCP 26(b)(5)(A).

22 After an ex parte, in camera review of the medical
23 records in dispute, the court finds that plaintiff's disclosures to
24 date and plaintiff's privilege log are both inadequate. The court
25 first observes that the medical records at issue are very difficult
26 to read and seem to require expertise in the medical field to
27 understand fully. This is true in part because the records contain
28 photocopies of the handwriting of doctors, which are at times

**7**

indiscernible, and in part because they contain medical terms and doctors' shorthand that are meaningless to the inconversant. The court is therefore, at the outset, concerned that the lay reader may have great difficulty accurately redacting the irrelevant from the relevant.

The court's concern deepened following a comparison of the complete disputed medical records with plaintiff's privilege log. Plaintiff claims injuries to her right hip, wrist, back and knee. She also claims that her injuries have affected her ability to ambulate, but she also has suffered from Lupus and arthritis prior to the accident. In claiming these injuries, according to the patient-litigant exception, plaintiff has put at issue the health of her right hip, wrist, back and knee as well as her ability to ambulate both before and after the incident that gave rise to this action. Nevertheless, several of the documents plaintiff's counsel has claimed as privileged mention plaintiff's "back," "left foot injury," "Lupus," "neck pain," "ambulation" and "exercise tolerance."

Additionally, plaintiff, while objecting to the disclosure of medical records from SFGC and SFCHN, did not object to the disclosure of similar records by Nancy Carteron, MD in this lawsuit. Doc #35 at 2, ¶5; 35-2, Exh D at 41-43. The records disclosed by Dr Carteron contain many identical documents to those for which plaintiff claims a privilege with respect to SFGC and SFCHN's disclosure. See, e g, Doc #35-2, Exh H (comparing unredacted version of Dr Carteron's notes produced without objection by Dr Carteron to copy of identical notes heavily redacted by plaintiff's counsel when subpoenaed from SFCHN).

8

Moreover, a significant number of plaintiff's afflictions have already been discovered as part of Dr Carteron's disclosures. See, e g, Doc #35-2, Exh D at 42 (detailing numerous afflictions suffered by plaintiff). By not objecting to the disclosure of these afflictions when they were requested from Dr Carteron, plaintiff has waived her privilege to object to disclosure of these afflictions by SFGC and SFCHN. This waiver of privilege is not reflected in plaintiff's privilege log and numerous documents in the disputed medical records, for which privilege is claimed, relate to afflictions that have already been disclosed without objection. See Doc #35-2, Exh I at 56-60. The indecipherability of some of the records may account for this waiver, but the burden of establishing the privilege rests with plaintiff, nonetheless.

### III

The disclosure of medical records involves important privacy concerns, as recognized by California law. The court's review of the medical records in dispute reveals that at least some of the documents contained therein have not been tendered by plaintiff in this action and the privilege has not been waived.

Nevertheless, this is not a case, as in <u>Britt v Superior Court of San Diego</u>, 20 Cal 3d 844 (1978), in which the defendant has subpoenaed the entirety of plaintiff's medical history. The disputed medical records here are from two health care providers who treated plaintiff for the injuries she sustained as a result of the incident giving rise to this lawsuit. While some of the subpoenaed records date back as early as 2000, Northwest's counsel has indicated that they only seek records dating back to July 9,

**9**

2004, a year before the incident.

Plaintiff's counsel has now had an opportunity to perform the difficult task of filtering the discoverable from the non-discoverable, but has not done so adequately. Given the court's lack of expertise and training in medicine, there is no reason to believe the court would do much better.

Accordingly, plaintiff shall produce all of the disputed medical records to Northwest, with a few limitations. Issues relating to OB/GYN and dental records have not been tendered by plaintiff, are not discoverable and should be sorted or redacted from the other documents. Additionally, plaintiff's health earlier than one year prior to the incident at issue has not been tendered and documents dated earlier than July 9, 2004 should also be sorted.

The disputed medical records, with the above limitations, shall be produced within 15 days hereof, subject to a protective order. The court trusts that counsel will agree on the provisions of such an order; if not, they should submit their respective proposals to the court. In the meantime, plaintiff's medical records may be seen by attorneys only and any consultants employed by them who shall subscribe to the limitations of any protective order hereafter entered.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge